Thompson v. Howard Mr. Yingling? Thank you and may it please the court. Patrick Yingling for the appellant James Thompson. With the court's permission I'd like to request three minutes for rebuttal. This case involves Mr. Thompson's Fourth Amendment excessive force claim against former police officer Norman Howard based on Howard's actions in running after Howard Thompson's car and firing five shots at Thompson as he drove away. The district court erred in granting summary judgment to Howard because it resolved multiple issues of material fact against Thompson, the non-moving party. Even assuming that you persuade us as to the constitutional violation, one of the issues we would need to address for qualified immunity, in view of Mullinex, why did the district court error in concluding that it was not clearly established that it was an unreasonable use of force in the context of that case? The Mullinex was different with respect to the facts and the key reason why Mullinex is different is that when the officer in Mullinex fired the shots, the fleeing suspect was racing towards officers he had threatened to kill. In the words of the Supreme Court, by the time Mullinex fired, the suspect had led police on a 25-mile chase at extremely high speeds, was reportedly intoxicated, had twice threatened to shoot officers, and was racing towards an officer's location. The fact that the suspect was racing towards an officer's location was key to the Supreme Court's holding in Mullinex. There was also a warrant for the arrest of the victim in Mullinex, right? I believe that may have been the case, Your Honor. That's right. In this case, the direction of the flight, that's a factor, but there's still high-speed flight across private property, uncontrolled driving, in a neighborhood where there are homes, presumably people in the homes. I mean, the relevant point is risk, right? Whether the risk is because you're driving at an officer or whether the risk is because you're driving at somebody's house, there's still risk, right? That's correct, Your Honor. The relevant inquiry is whether a reasonable officer in Howard's position would have believed that Thompson posed a serious risk to officers or anybody else in the area. And don't we have to look at the totality of all the circumstances, what preceded this flight, in terms of at least Thompson's version, that we have to accept as true? That's right, Your Honor. It is a totality of the circumstances inquiry, and I submit that when we look at the totality of the circumstances, we have facts that Thompson was driving away, that both were wrong. Well, you start with Thompson driving away, but what preceded Thompson driving away? And is that irrelevant? I don't think it's irrelevant, Your Honor, and I think if we look at what preceded Thompson driving away, it supports the fact that there's a genuine issue of material fact here. Would an officer attempt an unlawful arrest on Thompson, beat him with a baton, threaten to kill him, use racial slurs, which caused Thompson to flee the scene in this instance? What relevance does that have to the question that you have presented on appeal? Because the question presented to us, per the terms of your brief, is limited to the shots that were fired. Not an allegation, and you have made them to district court, but not on appeal, as to excessive force in what transpired earlier. That's correct, Your Honor. We're here focused on the shots, and I think the relevant inquiry is to look at, at the time that he fired the shots, what a reasonable officer would have believed. But the reason why I say that these prior instances may have some relevance is that a reasonable officer in Howard's situation would have realized that Thompson was not fleeing with the purpose or intent of causing harm to anyone. He was trying to get away from an officer who had just physically abused him in this situation. And when we throw in the fact that both Mahalik and Howard also testified that they could see no bystanders in the area when Thompson was fleeing, I think that also supports the fact that there's a genuine dispute of material fact here as to whether Thompson posed any threat to anybody at the time. The evidence tells us that the standard, what we're looking at, is the question of whether a fleeing suspect endangers, quote, other citizens who might be in the area. But here, he had already crashed into one officer's car, with that officer in person, trying to get out of the car, and then is going around that car at high speeds by his own words in his testimony, with my foot on the gas all the way to the floor and going through residential yards. How could we say that it's clearly established under Supreme Court case law or our case law that there was not an immediate risk at that point to persons who might be in the area? I think with respect to the clearly established point, I would look to this court's decision in Abraham v. Rasso as establishing the clearly established law on this point. In Abraham, this court held that, and I can get the language for you, Your Honor, even assuming Rasso, the officer, was in front of the car and was in danger at some point, a jury would find that she had not fired until it was no longer objectively reasonable for her to believe she was in peril. And that was a situation in which the fleeing suspect was in a mall parking lot where people were in the area. This court reversed summary judgment and held that there was a genuine disputed material fact. Is that a qualified immunity case? It's not a qualified immunity case. Wasn't that crucial? I mean, are you suggesting to us that the question on whether there should be summary judgment as to underlying liability is the same inquiry that we are presented with when we're asked the question of qualified immunity? No, Your Honor, I'm not saying it's the same question. I'm saying that Abraham is relevant because it clearly establishes constitutional law on this point, and that's the inquiry that we look at for qualified immunity here. Was the law clearly established prior to these events? And what do you say is the clearly established law? Frame it. Right. I think the clearly established law is that it's a violation of the Fourth Amendment for an officer to take deadly forceful shots at a fleeing suspect that is driving away from the officer and all others known to be in the immediate vicinity. When you say all others known to be in the immediate vicinity, aren't you assuming that the careening across people's private property, driving at height, pedal to the metal, literally according to him, across people's lawns, does not put other people at risk? You seem to be saying it's clearly established that if there's no risk to anybody else, you can't shoot at them. Have you assumed away an undisputed fact, which is this is a residential area and he's driving at a high rate of speed across people's lawns? I'm not assuming it away, Your Honor. I think two points are relevant, and that even though there are houses in the area, I think it's irrelevant here that establishes at least a disputed issue of material fact. I should mention that the summary judgment standard still applies when we look at qualified immunity, that Howard and Mahalik could not see anybody in the area at the time. I think it's also relevant that... I don't think that's unreasonable to believe that they are in the homes, but I think that one other factor to look at is the reason why Thompson may have been driving radically was because Howard had just fired five shots at him. This is a situation, if Howard claims that he didn't use excessive force because the force that he did use caused Thompson... I'm sorry to interrupt, but you just said he's driving radically because Thompson just fired five shots. I want to be clear about... because I don't think there's a dispute of fact about this. I thought he was driving at a high rate of speed across the lawns, not because shots had been fired, but because he'd just been chased around the car, being hit by a baton, and he was trying to get away. That's how he's characterized and you've characterized it. And so he's taken off. The shots weren't fired at the point where he's paddled to the metal, isn't that right? The shots come after, don't they? The shots are continuing over a period of time, I would submit, Your Honor, and I think that they're fired initially as Mr. Thompson goes around Mahalik's cruiser and Howard then runs down the road firing continuous shots afterwards. Is it relevant to the question of the danger posed by Mr. Thompson that the police officers did not pursue him after firing the shots? Actually, Your Honor, I think just a correction of the record. It's my understanding that they did pursue him, maybe not immediately after that, but at least one of the officers did go after him later. Is it relevant that the other officer on the scene, Mahalik, is that how you say his name? I believe so, Your Honor. Also fired a shot. Does that have any bearing at all on what a reasonable officer might have thought about the danger being posed? I don't believe so, Your Honor. I think that it's a different situation when we look at the position of Mahalik and Howard, and I would submit that... Why is that different? They're both on the scene. They both witnessed the crash into Mahalik's vehicle. So why is it different for one officer than for the other? I would say that it's different in respect to the context of what Howard would have known about the situation at the time, but even if it's the same, Your Honor, I would not admit or say that Mahalik was justified in firing that shot either. I wouldn't expect you would, but my question is, is there relevance to it? I don't know the answer to it. Is there anything that could be drawn or any interest to be drawn from the fact that more than one officer thought, I need to use my service revolver? I don't think so, Your Honor. I don't know that that argument has been made, and off the top of my head, I don't see the relevance that could support and help the summary judgment affirmance in this case. What about the fact that he had just crashed into the second officer's car with a threat of bodily injury to him as he was getting out of the car? Isn't that analogous to the circumstances in Molinex where the driver, the victim, was calling in that if the police didn't back away, he was going to shoot, proceed the sniper shots? That is, there has been an expression by the plaintiff in the case of their willingness to subject people around them to threat of life-threatening types of injuries. I think the key difference between Molinex in that situation and this situation is the timing and the fact that Molinex was within moments of encountering, he was driving at officers when the lethal force was used. In this situation, if Thompson put Mahalik in danger at any time, that happened before Howard fired even the first shot, but then Howard continued to fire shots as he ran down the road and fired at Thompson as he left, and I think that's a distinguishing point in this instance. I'd like to ask you a question about your reply brief. My colleagues will indulge me even though your red light is on. In page 2 of that brief, you say, in arguing that the law was unclear, Howard points to Brusso v. Haugen, a case that was explicitly limited in its holding because the events in question took place before this court decided Abraham v. Rosso. I have to say, I just didn't understand that sentence at all. How could a later decision by the Supreme Court be limited in its holding because of an earlier decision by our court? I guess the facts are, it's swapped, Your Honor. Abraham, well, this is the situation. The court in Brusso was deciding a qualified immunity question, and they said that we can only look at what the officer here would have known on February 21, 1999, and they said we can't consider the fact that the Third Circuit has clearly established the law on this point because the Third Circuit didn't decide Abraham until after February 21, 1999. So Abraham wasn't relevant to the Supreme Court's decision as to what was clearly established on the date in question there. Here, Abraham is very relevant. Mr. Howard had eight years to know where the law stood with respect to what Abraham had to say. Isn't the whole purpose of qualified immunity to put officers in a position where if they're deciding whether they need to use deadly force or just, not even deadly force, just a degree of force, they don't have to say, now, wait a second, how does Brusso and Abraham interact? Because one might limit the other. Before I pull this trigger, I thought the whole point of qualified immunity was to recognize there's a hazy border there where it's not helpful for society for courts to be doing Monday morning quarterbacking like that. Right. I would submit, Your Honor, that in Brusso, there was a hazy border because Abraham hadn't been decided yet. Abraham cleared that up. Abraham made it all clear. Yes. Okay. Okay. Respectfully ask the court to reverse and remand. Thank you. Okay. Thanks very much, Mr. Ying. Mr. Long. May it please the court, my name is Louis Long and I represent Officer Howard in this case. There are two independent bases upon which this court can affirm, but in direction for oral argument today, we were told to be prepared to address the Mullineaux case. Obviously, the court questioned opposing counsel quite a bit about Mullineaux, so I'd like to start with that point. The right involved in this case was not clearly established, and I'd submit to the court that Mullineaux is stark proof of the fact that the right was not clearly established here at the time that Officer Howard acted. Mullineaux. Why don't you begin with the question, if you would, that Judge Van Aske asked Mr. Gingley, and that is, is there relevance to what took place prior to the flight? There's the evidence which we are bound to take in the light most favorable to Mr. Thompson, that Mr. Howard was shouting racial epithets, chasing him, beating him with a baton and tasing him, all without any, there's no warrant, there's no, you know, all without those things going on. Does that bear on what happens later? Not from the qualified immunity standpoint, not from the reasonable establishment of the right. Why not? Because the test for determining whether the right was clearly established is based upon the officer's knowledge and what he, what legal knowledge he should be charged with. Not the factual, not specifically the factual circumstances. Let me try to explain it this way. I believe when we are talking about the first prong of the qualified immunity analysis, was there a constitutional violation? I believe the courts are directed to consider the totality of the circumstances. And I believe it's fair to say that when courts consider these shooting cases, they don't look just at the EO and stun, at the very moment the shots are fired. They look at, they do look at the broader context. So you're saying it does have relevance, that Howard was being chased and tased and beaten is all relevant? No, not necessarily, but there are factors to be considered. Don't we have to accept this as true? Thompson's statement that Howard said he was going to blow his head off and that he was going to, I'll skip the language, kill Thompson. It was rather colorful. Yeah, it was very colorful, very dramatic as well. But shouldn't that be for a jury to assess whether Thompson was not trying to evade capture, but was trying to avoid the continuing beating and getting his head blown off? Well, I submit that it's not controlling here, because when you look at... I'm not saying controlling, I'm just saying isn't this a matter that a jury should decide? No, I don't believe so, because I think the controlling factors are not disputed here. With respect to the objective reasonableness of Officer Howard's conduct, we have a situation here where Mr. Thompson had been warned, I'm sorry, Officer Howard had been warned by Officer Mihalik to be careful with this individual. He had seen Mr. Thompson engaged in furtive behavior, ducking underneath the car, trying to... And Officer Howard explained that he thought that Mr. Thompson may have been reaching for a weapon. He encountered aggressive and evasive behavior from Mr. Thompson. Officer Howard testified in his deposition that before he had this encounter chasing Mr. Thompson around the car, Mr. Thompson had his fists clenched and he appeared to be aggressive. And then they had this merry-go-round around the vehicle, during which time Howard told him not to get into the vehicle. But what did Thompson do? He got into the vehicle. He was being beaten at the time. I mean, that's the question about this. Does the escalating of the violence in the circumstance have relevance to the final shooting? That's why the question. But Mr. Thompson was also responsible for the escalation of the violence. What did he do? After he got into the car, he drove away at a very rapid speed. He struck another police car, for which he was convicted of two counts of assault and malicious mischief. Those facts cannot be contradicted by Mr. Thompson. But he was acquitted on the resisting arrest charge? Yes, he was. Because it wasn't a lawful arrest? Well, I'm sorry. No, he was not acquitted. The charge was dismissed. But didn't the state court adjudicate a fine that it was not a lawful arrest? That is correct. Once Mr. Thompson is back in the vehicle, he's still looking from Officer Howard's perspective, he's still looking and leaning over, possibly trying to get a weapon. He's taking a vehicle away from the scene of the arrest of the female driver, and at the time, Officer Howard had a right to conduct a search of that vehicle to see if there were weapons, to see if there was contraband. So you've got Thompson taking a vehicle away from the scene that meant the vehicle may contain a weapon. You're not suggesting, are you, that deadly force would have been justified because of theft of evidence? I mean, is that the position you're taking? He was driving away with the evidence, so I was entitled to shoot him. I think it's a factor to consider. I'm not saying it's controlling. Where would you find that in the law, Mr. Long? Because the deadly force cases all seem to involve circumstances where somebody is at risk of bodily injury. As does this case. Right. So what relevance could it have? What could it add for you to say, oh, he's getting away with the evidence, I'll shoot him. That can't be your position, can it? No. Strictly, I would rely on the fact that there was imminent threat. It was not threat by verbal action, as in Molyneux. It was threat by deeds. Mr. Thompson struck the police car that Officer Mayo had gotten in. Is that undisputed, that he struck the police car as opposed to the police car striking his, the vehicle he was driving? That's what he was convicted of. He was convicted of striking the police car. Lamont tells us that you have to continue to reassess at various moments in time, the immediacy of the threat that the plaintiff in the 1983 case is posing to the officer. Yes. So even if there is, even if at the moment when he's reaching over to the passenger side, there might appear to be an immediate threat, or even crashing into the car, an immediate threat, if we take all the facts and inferences in light most favorable to the plaintiff here, at the moment he's driving away, how would you characterize the immediacy of the threat? There's immediacy to the threat of, and it doesn't need to be an actual threat. It's whether the officer reasonably believes there could be a threat. And as it turns out, there were two pedestrians in the area. Ms. Kyde and a companion of hers were in the area as Mr. Thompson was speeding away. Judge Jordan, in his questioning of opposing counsel, made reference to the homes that may have been occupied. Certainly there was a possibility of threat to individuals in those homes. Possibility of threat to motorists, to other motorists, as Mr. Thompson is speeding away and driving. Now, there weren't any on the road at that time. Let's just freeze that moment. And would it be your position, say an officer pulls over a car, you know, who was crossing median, pulls the car over, you know, gets out of the car, and the person takes off. And as they're taking off, they're swerving on the road. Would you say it wasn't a clearly established law that it was an unreasonable use of force in that circumstance for a police officer to pull out their revolver and start firing at the departing vehicle? Well, the hypothetical that you just posed, Judge Krauss, omits a very significant factor that is present in this case. Your hypothetical did not involve any threat of harm to the officer or to anyone else at the time that the vehicle started to drive off. If someone was driving recklessly, why is that any different threat to pedestrians who may be in the area or on the next block? I think we're talking about shades of gray here. We're not talking about black and white situations. And I submit that that possibly could be a different situation than what we have here where Mr. Thompson did drive his vehicle into Officer Mihalik, Chief Mihalik's vehicle. But we're looking at the moment in time when the shots are fired. That is, what is the immediate risk? What could an officer reasonably believe at that point was an immediate risk? And taking, again, taking all of this in the light most favorable to plaintiff, we need to assume that he's at that point driving away. All of this happened in a matter of split seconds. We're not talking about an extended period of time like we have in this courtroom to think about these circumstances and to mull over what is the law and what can I do here. The officer is charged, has to act promptly under tense situations, involving situations, and qualified immunity doctrine exists to protect the officer if he happens to make a wrong judgment about those kinds of things. Now Officer Howard here knew that there had been impact with Chief Mihalik's car. He didn't know Chief Mihalik's condition at that time. He knew that Mr. Thompson was driving away at a high rate of speed. And that's a similar set of circumstances to what was before the Supreme Court of the United States. In the Brousseau case, the 1983 plaintiff was driving away at the time the shots were fired. But Brousseau only establishes qualified immunity. That's correct, and that's the proposition I was citing it for. It doesn't immunize police officers forever when confronted with a similar situation. If a court, like we did in the Abraham case, says this is a violation of clearly established law. But Abraham was decided in 1999, five years before Brousseau. But the incident giving rise to Brousseau occurred before Abraham. The officer couldn't know what was going to happen in Abraham. That's true. But now let's hit the fast forward button a little bit. The Mullinex case, the incident happened in 2010. And the Mullinex case evaluated the qualified immunity standard as it existed in 2010. Why am I making a point of that? That's two years, almost two years and two weeks to the day after the incident that happened in this case. And Mullinex teaches that we are to examine the question of qualified immunity with a degree of particularity, understanding the particular facts of that incident. And you would have to concede, I think, that Mullinex is much different than our situation here. 25 mile high speed chase, warrant for his arrest, threats to kill officers and heading towards officers. None of which is precedent. I'm sorry, Judge Vanosky. But in concluding that there was qualified immunity in the Mullinex case, the Supreme Court looked at the Brousseau case, which I think is a very close factual paradigm to what we have in this case. And the Supreme Court cited to Brousseau as staking out one of the positions. And it contrasted Brousseau with a case called Little from the Fifth Circuit. And the Little case from the Fifth Circuit is factually similar to the Abraham case. So even though the Supreme Court of Mullineaux didn't take on Abraham and condemn it to the infamy of overruled decisions, it talked about a very similar case, the Little case. And noting that tension between Brousseau on the one hand and Little, which involved flight on the other, the Supreme Court said the law is murky in 2010. And that's significant because if it's murky in 2010, it had to be murky in 2008 when Officer Howard acted in this case. It doesn't get more murky over time. It was murky in 2008. It was still murky in 2010. And that's how the officer was immunized in Mullineaux, admittedly under somewhat different factual circumstances. But the precedents that the court looked at in Mullineaux are very instructive to the situation that's before this court. Okay. Anything further? All right. Thank you, Mr. Long.  Mr. Ewing, your rebuttal, please. Your Honors, I'd like to pick up where we left off. We're talking about Mullineaux and what happened in that case and the facts of it. We talked about the factual differences. I would submit that the court in particular relied on the fact that the suspect was driving towards the officers in reaching his conclusion. Well, that was one factor, right, Mr. Ewing? Right. If there's one thing you can absolutely take away from Mullineaux as well as from Brousseau, isn't it the court's repeated emphasis on the idea that the constitutional right cannot be pitched at too high a level of abstraction. It has to be very specific and concrete, tied to the specific facts of the case. Not that you have to have a case exactly on all fours, but you have to be able to look at the specific factual context and answer the question, was it clearly established that deadly force could not be used in those circumstances, before you can say qualified immunity is inappropriate. Am I right about that? That is correct, Your Honor. Okay. So it won't do, will it, just to say, look, he was driving toward him and try to say that's a determinative factor because there's a whole complex of factors and we have to look at the complex of factors and then ask that very fact-bound, fact-specific question, right? Right, Your Honor. And I think that the very general, clearly established right that the plaintiff was trying to establish in Mullinex was just a rehash of the legal standard, and that's not appropriate. But here, the clearly established right comes from Abraham and it's the right that we talked about earlier. It's that an officer violates the Fourth Amendment when he fires at a suspect driving away from the officer when no other bystanders are known to be in the area. In your preparation for arguing this case, did you come across a recent Tenth Circuit case called Polley v. White that was decided after Mullinex? No, I didn't, Your Honor. All right. Okay. Okay. If you've got nothing further, we'll move on. Unless the Court has further questions, I would respectfully request reversal and remand for further proceedings. Thank you. All right. Thank you very much, Mr. Ewing. Thank you, Mr. Long. We've got the case under advisement. Appreciate your help with it. And we'll turn to our next witness.